**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANONE US, LLC and WHITEWAVE SERVICES, INC., | |
| *Plaintiffs*, | |
| v. | Civil Action No.: 1:25-cv-6217 |
| | **JURY TRIAL DEMANDED** |
| CHOBANI, LLC, | |
| *Defendant*. | |

## COMPLAINT

Plaintiffs Danone US, LLC and WhiteWave Services, Inc. (collectively, "Danone"), by and through their undersigned counsel, for their Complaint against Defendant Chobani, LLC ("Defendant" or "Chobani"), hereby allege as follows:

## NATURE OF THE ACTION

1.     This action arises out of Chobani's efforts to misappropriate Danone's intellectual property, trade on Danone's goodwill and reputation, and undermine Danone's market position by using the exact same trademark on the exact same product type sold through the exact same channels of trade.

2.     Chobani's infringement of Danone's valuable intellectual property rights has been knowing, calculated, and systematic.  Not only did Chobani adopt a trademark that was exactly the same as the unique and distinctive BRIGHT & MELLOW trademark used by Danone in connection with ready-to-drink cold brew coffee products, but it significantly altered its product packaging at the same time to more closely match Danone's distinctive packaging as well.

3.      The similarities between the two products' packaging—and the use of the exact same mark—is no coincidence.  This is merely the latest in a long line of efforts on the part of Chobani to unfairly compete with Danone and copy Danone's product packaging.

4.      For example, in *Chobani, LLC v. The Dannon Company, Inc*., 157 F. Supp. 3d 190 (N.D.N.Y. 2016), Judge Hurd entered a preliminary injunction enjoining Chobani from engaging in false advertising through Chobani's literally false "Simply 100" yogurt campaign, finding that Chobani falsely depicted Dannon products as having chlorine added to them, when they did not.

5.      Similarly, in *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109 (S.D.N.Y. 2019), Judge McMahon found that Chobani's claim of 33% less sugar in its kids' drinkable yogurt product as compared to Danone's was impliedly false and "harm[ed] consumers . . . because it misleads parents about the sugar content of a product intended for their children."  Id. at 123.

6.      Through this action, Danone brings claims for unregistered trademark infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and related claims of trademark infringement and unfair competition under New York common law.

7.      Danone seeks to permanently enjoin and restrain Chobani from marketing, advertising, promoting, distributing, and selling products that infringe upon Danone's trademarks.  Danone also seeks monetary damages resulting from Chobani's infringement of Danone's intellectual property.  Because Chobani has knowingly misappropriated Danone's intellectual property for its own benefit, disregarding Danone's rights, its infringement is willful.

Accordingly, Danone also seeks and is entitled to an award of treble damages, costs, and attorneys' fees.

## THE PARTIES

8.    Plaintiff Danone US, LLC is a corporation organized and existing under the laws of the state of Delaware.  It maintains its principal place of business at 1 Maple Avenue, White Plains, NY 10605, and sells and markets products under a variety of category-leading brands, including SToK Cold Brew.

9.    Plaintiff WhiteWave Services, Inc., is a corporation organized and existing under the laws of the state of Delaware.  It maintains its principal place of business at 1 Maple Avenue, White Plains, NY 10605, and is the owner recited on the SToK trademark registrations and applications (discussed in more detail below).

10.    On information and belief, Defendant Chobani, LLC is a limited liability company organized and existing under the laws of the state of Delaware and maintains its principal place of business at 147 State Highway 320, Norwich, New York 13815.  Chobani owns La Colombe, which also produces a number of ready-to-drink cold brew coffee products.

## JURISDICTION AND VENUE

11.    This Court has personal jurisdiction over Chobani because it is a Delaware LLC that continuously and systematically transacts business in New York, and because Chobani has sold products bearing the Infringing Mark (defined below) to consumers in New York and in this judicial district.  Personal jurisdiction is also proper because Chobani has committed tortious acts in New York, including in this judicial district, and Danone's claims arise out of Chobani's tortious acts.  Chobani also has contacts in New York and this judicial district sufficient to permit the exercise of personal jurisdiction.

12.     This Court has subject matter jurisdiction over Danone's claims for trademark infringement and unfair competition arising under 15 U.S.C. § 1051 et seq. pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 15 U.S.C. § 1121.

13.     Danone's claims for trademark infringement and unfair competition arising under New York common law are so related to its claims arising out of federal law that they form part of the same case or controversy.  This Court therefore has supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(a).

14.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and/or (c) because Chobani is subject to personal jurisdiction in this District and/or because a substantial portion of the events giving rise to the claims occurred in this District.

## FACTS

### Danone's SToK Cold Brew Brand

15.     Danone is one of the largest food and beverage companies in North America, and owns market-leading brands in yogurt, plant-based food and beverages, baby and specialized nutrition, water, creamers, and ready-to-drink ("RTD") coffee.

16.     Danone offers its RTD cold brew products under the SToK brand.

17.     SToK first launched over a decade ago with a single product: espresso coffee shots.

18.     Since its founding, SToK has evolved into a best-selling, award-winning portfolio of RTD coffee products, and now includes RTD black cold brew coffees of varying roast levels, RTD cappuccino-inspired flavored cold brew coffees, seasonal flavors, energy coffees, and, most recently, the first RTD decaffeinated cold brew made available in stores nationwide.

19.     Throughout this growth, SToK has remained committed to its founding principles of responsibility, sustainability, and social and environmental accountability.

4

20.     Today, SToK is the leading RTD black cold brew brand in the U.S. in terms of market share and is the top-selling black RTD coffee by velocity.

21.     The RTD coffee category as a whole has grown dramatically over the last five years, with young adult consumers especially driving growth in this category.  The U.S. RTD multi-serve coffee category is currently valued at nearly $1.3 billion and is expected to reach nearly $1.6 billion in the next five years.

**Development of the BRIGHT & MELLOW Mark**

22.     One of SToK's most popular and commercially successful products is its un-sweet, light roast RTD cold brew (the "BRIGHT & MELLOW Product"), which is sold under the flavor name and trademark "BRIGHT & MELLOW" (the "BRIGHT & MELLOW Mark").

23.     The BRIGHT & MELLOW Product was first introduced in January 2021, and since its introduction, has consistently been marketed and sold in the same packaging, featured below (the "BRIGHT & MELLOW Packaging"):



24.     The BRIGHT & MELLOW Packaging consists of several distinctive elements including a golden yellow color and a decorative bar (containing the words "un-sweet," printed vertically, and "black" within it) running from the top of the bottle, appearing to originate underneath the cap of the bottle, and terminating just above the main label of the packaging, which label features (i) the BRIGHT & MELLOW Mark (set apart from the remainder of the label); (ii) the SToK trademark; (iii) the phrase "cold brew coffee" presented in a stylized orientation; and (iv) information about the roast level (i.e., "Lighter Roast").

25.     In mid- to late-2020, prior to the introduction of the BRIGHT & MELLOW Product, Danone was looking to expand its line of black, un-sweet RTD cold brew products, as it determined that SToK's strength and consumer appeal were best embodied by such products.  At this time, SToK already offered the BOLD & SMOOTH RTD cold brew product, as well as the EXTRA BOLD RTD cold brew product.

26.     Based on its existing product offerings, which focused heavily on darker roasts, Danone determined that the best new type of un-sweet RTD cold brew product to offer to consumers would be a lighter roast RTD cold brew product.

27.     In introducing this new product, Danone was particularly focused on selecting the right name for the product.  At that time—and continuing to this day—Danone's primary competitors in the RTD cold brew market, including Starbucks, Califa Farms, and Chobani/La Colombe, placed a heavy emphasis on either roast level (e.g., light roast, dark roast, medium roast, French roast, espresso roast, etc.) or coffee bean origin (e.g., Brazil, Colombia, Ethiopia, etc.) when naming and describing their products:

6





28.    Danone wanted to avoid this trend for several reasons.  First, Danone wanted to

differentiate its new offering from existing lighter/blonde roast products already in the market.

Second, Danone wanted the new product to be accessible to all consumers, and not just

experienced, informed, or pre-existing coffee drinkers, because Danone identified first-time

buyers and new households as fast-growing segments of the RTD cold brew consumer population.  Third, Danone wanted the product name primarily to convey a "taste experience" to consumers that was appealing, with the roast level acting as the reason to believe the taste experience assertion (rather than having the roast level be the entire focus of the product).

29.    After substantial consumer research, Danone landed on "Bright & Mellow" as the name for its new product.  Danone determined that "Bright & Mellow" cued in consumers desirable associations and suggested an enticing and positive taste experience, while also acting as a unique differentiator among competing products.

30.    In fact, the uniqueness of the name was identified as a potential drawback for "Bright & Mellow" during Danone's consumer research, with some focus group respondents explicitly reporting that the name did not convey any useful information about the product or its taste.  For instance, one respondent stated, "I don't really know what to expect it to taste like from the name," and another respondent replied, "I can imagine mellow but not bright so I might try but probably not."

31.    The "Bright & Mellow" name also had the added benefit of mirroring trademarks already in use by SToK at the time of the BRIGHT & MELLOW Product's launch, including its LOW AND SLOW trademark, as well as its BOLD & SMOOTH trademark.[1]

32.    Keeping in line with Danone's desire to emphasize the unique product name, downplay the roast level, and differentiate the BRIGHT & MELLOW Product from those of its competitors, Danone designed the BRIGHT & MELLOW Packaging to feature the name at the top of the Packaging, while placing the roast level (which serves to describe the taste experience suggested by the name) at the bottom:

---

[1] Danone owns an incontestable trademark registration covering the LOW AND SLOW trademark (U.S. Reg. No. 5,242,735) as well as an application for the BOLD & SMOOTH trademark (Serial No. 99/126,657).

**SToK Packaging**



**Competitive Packaging**



*Starbucks*                              *Califa Farms*

**Danone's Investment in the BRIGHT & MELLOW Mark and Product**

33.     Since its launch, Danone has invested substantial resources into the advertisement, marketing, and promotion of the BRIGHT & MELLOW Product.

34.     Danone has spent hundreds of thousands of dollars on such advertising and marketing efforts, including through its own website, the SToK website, and Danone's and SToK's social media pages, as well as through in-store advertising such as aisle displays in the brick-and-mortar locations where the BRIGHT & MELLOW Product is sold.

35.     Furthermore, since introducing the BRIGHT & MELLOW Product in 2021, Danone has sold over 16.6 million units and made nearly $100 million in revenue as a result of such sales.

36.     The BRIGHT & MELLOW product has also been the focus of unsolicited media coverage, including in industry publications[2] and social media content/reviews.

37.     As a result of the above extensive, continuous, and well-publicized use of the BRIGHT & MELLOW Mark, consumers have come to associate the BRIGHT & MELLOW Mark with a single source, namely Danone, and Danone has acquired strong trademark rights in the BRIGHT & MELLOW Mark.  Accordingly, the BRIGHT & MELLOW Mark has acquired secondary meaning in the minds of consumers as an indicator of source.

38.     In addition, Danone owns U.S. Trademark Application Serial No. 99/042,437 for the BRIGHT & MELLOW Mark (the "BRIGHT & MELLOW Application), which was approved for publication on July 22, 2025 by the United States Patent and Trademark Office. This approval came without the U.S. Patent and Trademark Office issuing any Office Actions in connection with the BRIGHT & MELLOW Application.

---

[2] *See, e.g.*, https://www.dairyfoods.com/articles/94828-on-trend-rtd-beverages-keep-em-thirsting-for-more; https://foodsided.com/2021/03/13/starbucks-ready-to-drink-cold-brew/.

**History of La Colombe's Multi-Serve Cold Brew Products**

39.    On information and belief, La Colombe first introduced a multi-serve RTD cold brew product in or around 2019.  The first such product offering from La Colombe was its medium/dark-roast Brazilian single-origin cold brew, which was packaged in a light blue bottle with a large, dark blue band bisecting the bottle:



40.    In or around 2020, La Colombe introduced a second multi-serve RTD cold brew product, a light roast Colombian single-origin cold brew.  This product appeared in a bright yellow bottle and featured the same bisecting dark blue band:



11

41.     Consistent with the naming conventions adopted by most players in the market at that time, La Colombe's focus in naming and describing these products was on both the roast level and coffee bean origin.  In fact, the only "name" or descriptor presented on these original products' packaging related to the roast level and the bean origin; there were no other terms used to describe or otherwise suggest the flavor profile present on the bottles.

42.     In or around Spring 2021, following Danone's introduction of the BRIGHT & MELLOW Product, Packaging, and Mark, La Colombe introduced their third multi-serve RTD cold brew product, which was their first dark roast product in this line.  Along with the introduction of this third product, the product packaging for the existing products was redesigned slightly—while the color scheme remained the same, information regarding the product was added to the bottom of the bottle.  Thus, the medium/dark roast Brazilian coffee (blue bottle) featured the phrase "Bold & Rich;" the medium roast Colombian coffee (yellow bottle) featured the phrase "Bright & Flavorful;" and the new dark roast Brazilian coffee (red bottle) featured the phrase "Strong, Smooth, & Rich" along with the phrase "Extra Bold:"



43.     In addition, with respect to the Colombian coffee (yellow bottle) specifically, the roast level indicated on the package changed from "light roast" to "medium roast" as part of the label redesign.

44.     Following this redesign, La Colombe's product packaging for its multi-serve single-origin RTD cold brew products remained the same for the next several years.

**Chobani's Acquisition of La Colombe and Adoption of the Infringing Mark**

45.     On December 15, 2023, Chobani announced its acquisition of La Colombe for $900 million.[3]

46.     Prior to acquiring La Colombe, Chobani had attempted to enter into the RTD cold brew market in 2021 with its own line of Chobani-branded single-origin cold brew products, but such products were commercially unsuccessful and were eventually discontinued by Chobani.

47.     In connection with Chobani's announcement of the La Colombe acquisition, it published a promotional photograph featuring La Colombe products flanked by various Chobani products.  This photograph prominently featured the medium/dark roast Brazilian single-origin cold brew product (in its then-current product packaging):



---

[3] *See* https://www.chobani.com/newsroom/our-news/Chobani-Acquires-La-Colombe.

48.     About a year after this acquisition, in or around December 2024, Danone learned that Chobani had significantly changed the long-standing product packaging for at least its medium-roast Columbian coffee product (following such product packaging change, the "Infringing Product").  This change included modifying the bright yellow color (which had been used on this product since its introduction into the market in 2020) to a more muted, golden yellow color; removing the large blue band bisecting the bottle (which, again, had been a prominent part of the product packaging since its inception); and adding a vertical band running from the cap of the bottle to approximately one-third of the way down the bottle, with such band including the word "unsweet" printed vertically and the words "pure black" printed horizontally:



49.     In addition, and most notably, Chobani changed the phrase that appeared on the bottom of the bottle from "Bright & Flavorful" to "Bright & Mellow" (the "Infringing Mark"):

14



50.     Further, although Chobani kept the roast level at the top of the bottle (consistent with La Colombe's prior packaging and how every other major RTD coffee producer apart from Danone labels their products), it lightened the color significantly and removed it from the dark blue offsetting background, thereby making it barely noticeable. Chobani also changed the roast level back from "medium roast" (which it had been listed as for approximately three and a half years) to "light roast," the same roast level as the BRIGHT & MELLOW Product.



*Original La Colombe Packaging*



*Updated La Colombe Packaging*

51.     Prior to the acquisition by Chobani, La Colombe had only ever used the phrase "Bright & Flavorful" in connection with the medium roast product and had not used the term "mellow" at any point in connection with the marketing, advertisement, or promotion of the product.

52.     Indeed, since the phrase "Bright & Flavorful" was introduced alongside the product packaging redesign in early 2021, La Colombe has repeatedly used this phrase, and only this phrase, in connection with the product, not only on its packaging, but also on its website.[4]  In fact, this phrase—along with the non-modified product packaging—still appears on the La Colombe website to this day.  Moreover, the La Colombe website still lists the roast level as "medium roast" and not "light roast."[5]



**Chobani's Actions Are Likely to Harm Danone**

53.     Chobani's changes to its packaging of the Infringing Product—and in particular the adoption of the Infringing Mark—make the Infringing Product strikingly similar in appearance to the BRIGHT & MELLOW Product:

---

[4] *See, e.g.*, https://web.archive.org/web/20210413002948/https://www.lacolombe.com/pages/single-origin-cold-brew.

[5] *See* https://www.lacolombe.com/pages/single-origin-cold-brew (*last visited* July 29, 2025).



54.     Chobani's changes to its product packaging, and adoption of the exact same mark for the exact same type of product, will inevitably cause consumer confusion with the BRIGHT & MELLOW Mark, and cause severe and irreparable harm to Danone and the goodwill it has built up in the BRIGHT & MELLOW Mark over the past four and a half years.

55.     As noted above, the BRIGHT & MELLOW Mark is both conceptually and commercially strong and is directly associated in the minds of consumers as an indicator of source for Danone's BRIGHT & MELLOW Product, making confusion even more likely.

56.     Further, the target consumer for the BRIGHT & MELLOW Product is, in many cases, unfamiliar with this category in general and unlikely to be able to easily discern among competing products.  Indeed, as noted above, part of the draw of the BRIGHT & MELLOW Mark for Danone was its ability to act as a unique differentiator, particularly among new households and consumers coming into this market for the first time.  Such consumers are, by

17

definition, not sophisticated or well-educated in this category, and are thus more likely to be confused by Chobani's adoption and use of the Infringing Mark (along with product packaging that largely mimics the BRIGHT & MELLOW Packaging).

57.    Moreover, the BRIGHT & MELLOW Product and the Infringing Product are both advertised and sold through many of the exact same channels, including being located next to each other in many brick and mortar stores across the country such as Target, Kroger, and Wal-Mart.  Accordingly, a hurried customer looking for Danone's BRIGHT & MELLOW Product would be easily confused in buying a similar looking—and similar branded—Chobani product that appeared in the exact same location in the store.



58.    And this is not the first time that Chobani has taken steps to copy Danone's product packaging.  For example, after Danone introduced its Oikos Pro and Oikos Triple Zero

high-protein Greek yogurt products, which are sold in a distinctive black package, Chobani released its own high-protein Greek yogurt product in a dark, navy blue package with similar cup shape, font, and graphics.

59.    As a result of Chobani's infringing use as described above, Danone sent a cease-and-desist letter to Chobani on March 12, 2025, asking Chobani to cease using the Infringing Mark and agree that it would not use the BRIGHT & MELLOW Mark or any confusingly similar mark on any food or beverage products in the future.  However, to date, the parties have been unable to resolve this dispute.

60.    Accordingly, Danone has been forced to file this suit to protect itself and its rights.  As a result of Chobani's infringing conduct, Danone has experienced actual damages in the form of lost profits as well as damage to the goodwill and reputation Danone has built up in the BRIGHT & MELLOW Mark, and Chobani has been unjustly enriched through the use of a confusingly similar mark to the BRIGHT & MELLOW Mark.

## CLAIM ONE: INFRINGEMENT OF THE
## BRIGHT & MELLOW MARK IN VIOLATION OF THE LANHAM ACT

### (15 U.S.C. § 1125(a))

61.    Danone incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

62.    Danone has ownership rights in the BRIGHT & MELLOW Mark.

63.    Danone currently uses the BRIGHT & MELLOW Mark to identify the BRIGHT & MELLOW Product and the source of its product.

64.    The BRIGHT & MELLOW Mark is distinctive and has achieved substantial secondary meaning and goodwill in that it has come to be associated with a single source in the minds of consumers.

65.    The BRIGHT & MELLOW Mark thus constitutes a protectable trademark pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.    Danone uses the BRIGHT & MELLOW Mark in commerce in connection with the marketing, advertising, promotion, and sale of RTD cold brew products.

67.    Chobani has used a trademark in interstate commerce, which mark is confusingly similar to the BRIGHT & MELLOW Mark, in connection with the marketing, advertising, promotion, and sale of RTD cold brew products.

68.    Chobani's actions are likely to cause, have caused, and will continue to cause confusion, mistake, and deception in the minds of consumers as to the source, origin, affiliation, or sponsorship of Chobani's and/or Danone's products.  Chobani's actions enable and have already enabled Chobani to free ride on Danone's reputation and goodwill associated with the BRIGHT & MELLOW Mark.

69.    Chobani's acts therefore constitute trademark infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

70.     On information and belief, Chobani was aware of the BRIGHT & MELLOW Mark at the time the Infringing Mark was adopted, and the Infringing Product was conceptualized, marketed, advertised, promoted, offered for sale, and/or sold.  Accordingly, Chobani's infringement as described above is deliberate, willful, and in bad faith, rendering this an exceptional case under 15 U.S.C. § 1117.

71.    Chobani's acts of infringement have caused irreparable harm in addition to monetary damage to Danone, including but not limited to harm to Danone by virtue of damage to the goodwill and reputation of Danone's business, and unless enjoined and restrained, will cause further irreparable harm, leaving Danone with no adequate remedy at law.

## CLAIM TWO: UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT

## (15 U.S.C. § 1125(a))

72.     Danone incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

73.     By virtue of having used and continuing to use the BRIGHT & MELLOW Mark in commerce, Danone has acquired trademark rights in the BRIGHT & MELLOW Mark.

74.     The BRIGHT & MELLOW Mark is distinctive and serves to identify Danone as the source of the BRIGHT & MELLOW Product.

75.     Chobani has used and continues to use a trademark that is confusingly similar to the BRIGHT & MELLOW Mark without Danone's consent.

76.     Chobani's unauthorized use in commerce of a trademark that is confusingly similar to the BRIGHT & MELLOW Mark in connection with the exact same product constitutes a false designation of origin or false and misleading description or representation of goods and services in commerce, with knowledge of the falsity, which is likely to cause confusion, mistake, and deception, and in commercial advertising and promotion, misrepresents the nature, characteristics, qualities, and origin of Chobani's commercial activities.

77.     Chobani's activities, alleged herein, have a substantial economic effect on interstate commerce.

78.     Chobani's activities, alleged herein, constitute unfair competition within the meaning of 15 U.S.C. § 1125(a).

79.     Chobani acted willfully, with full knowledge of Danone's prior rights in the BRIGHT & MELLOW Mark, and those acts constitute a willful violation of the Lanham Act.

80. As a result of these actions, Danone has suffered irreparable injury and, unless Chobani's infringement is enjoined by the Court, Danone will continue to suffer irreparable harm. There is no adequate remedy at law for the harm caused by Chobani's infringing conduct.

## CLAIM THREE: COMMON LAW TRADEMARK INFRINGEMENT

### (New York Law)

81. Danone incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

82. Chobani's conduct alleged herein constitutes trademark infringement under the common law of the state of New York.

83. Chobani's conduct alleged herein caused irreparable harm in addition to monetary damage to Danone, including but not limited to harm to Danone by virtue of damage to the goodwill and reputation of Danone's business, and unless enjoined and restrained, will cause further irreparable harm, leaving Danone with no adequate remedy at law.

## CLAIM FOUR: COMMON LAW UNFAIR COMPETITION

### (New York Law)

84. Danone incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

85. Chobani's conduct alleged herein, including its use of the Infringing Mark and bad faith copying of the BRIGHT & MELLOW Packaging, constitutes unfair competition under the common law of the state of New York.

86. Chobani's conduct alleged herein caused irreparable harm in addition to monetary damage to Danone, including but not limited to harm to Danone by virtue of damage to the goodwill and reputation of Danone's business, and unless enjoined and restrained, will cause further irreparable harm, leaving Danone with no adequate remedy at law.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, Danone respectfully requests that this Court enter judgment in its favor on the claims set forth above and award it relief including, but not limited to:

1. Finding that: (i) Chobani has infringed upon the BRIGHT & MELLOW Mark in violation of 15 U.S.C. § 1125(a); (ii) Chobani has engaged in unfair competition in violation of 15 U.S.C. § 1125(a); (ii) Chobani has engaged in trademark infringement under New York common law; and (iv) Chobani has engaged in unfair competition under New York common law;

2. Entering a permanent injunction enjoining and restraining Chobani, its agents, servants, officers, directors, employees, affiliates, and all those acting in privity, active concert, or participation with any of them, and their parents, subsidiaries, divisions, successors, and assigns who receive actual notice of the order and judgment by personal service or otherwise, from using in commerce or in connection with any goods or services any mark, name, or design that creates a likelihood of confusion with the BRIGHT & MELLOW Mark, and from engaging in any other acts of unfair competition;

3. Awarding Danone all direct damages, indirect damages, consequential damages (including lost profits), special damages, costs, fees, and expenses incurred by reason of Chobani's wrongful acts;

4. Awarding Danone treble damages sustained as a result of Chobani's willful and unlawful conduct, pursuant to 15 U.S.C. § 1117(a);

5. Ordering an accounting by Chobani to Danone for any and all profits derived as a result of marketing, promoting, or selling any goods or services using any mark, name, or design that is confusingly similar to the BRIGHT & MELLOW Mark;

6.      Awarding Danone actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit;

7.      Awarding Danone pre-judgment interest on any money awarded and made part of the judgment;

8.      Awarding Danone the maximum punitive and exemplary damages available under New York law;

9.      Awarding Danone its actual costs and attorneys' fees incurred in bringing and defending this action pursuant to 15 U.S.C. § 1117(a);

10.      Awarding Danone pre-judgment and post-judgment interest on each and every monetary award to Danone; and

11.      Granting such other relief the Court deems just and proper.

## **JURY DEMAND**

Danone respectfully requests a trial by jury as to all issues so triable.

Dated: July 29, 2025                    By:  */s/ David M. Lamb*
                                        David M. Lamb

                                        David M. Lamb (Bar No. 5283283)
                                        David.lamb@gishpllc.com
                                        Andrew D. Gish (Bar No. 4918454)
                                        andrew@gishpllc.com
                                        Gish PLLC
                                        41 Madison Avenue, Floor 31
                                        New York, NY 10010
                                        (212) 518-2000

                                        *Counsel for Plaintiff*