UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANONE US, LLC and WHITEWAVE SERVICES, INC.,

Plaintiffs,

-against-

CHOBANI, LLC,

Defendant.

Case No. 1:25-cv-06217 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs Danone US, LLC and WhiteWave Services, Inc. (together, "Danone") bring this action against Defendant Chobani, LLC ("Chobani" or "Defendant") for infringement of an unregistered trademark and unfair competition under Section 43(a) of the Lanham Act, and for trademark infringement and unfair competition under New York common law. Dkt. 1 ("Compl." or the "Complaint") ¶¶ 61-86. Danone alleges that Chobani adopted the phrase "BRIGHT & MELLOW" on a directly competing ready-to-drink cold brew coffee product after Danone had used that phrase for several years as a trademark in connection with its own cold brew product. Now before the Court is Defendant's motion to dismiss the Complaint in its entirety for failure to state a claim on which relief can be granted. Dkt. 17 ("Mot."). For the reasons that follow, the motion is DENIED.

## BACKGROUND

### I. Factual Background

The following facts are drawn from the Complaint and taken as true for purposes of this motion. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024).

**A. The Product**

Danone sells ready-to-drink ("RTD") coffee products, including an unsweetened, light roast RTD coffee sold under Danone's STōK Cold Brew brand (the "Product"). Compl. ¶¶ 8, 15-16, 22. Since its January 2021 launch, the Product has been marketed with the phrase "BRIGHT & MELLOW," which Danone contends functions as both the product's "flavor name and trademark." *Id.* ¶¶ 22-23. The Product's packaging, shown below, displays the phrase on a yellow label, along with the STōK trademark, the words "cold brew coffee," and roast-level information identifying the product as a "Lighter Roast." *Id.* ¶¶ 22-24.




*Id.* ¶ 23.

Danone alleges that it selected the phrase "BRIGHT & MELLOW" (the "Mark") after internal research into potential names for a new light roast cold brew product. *Id.* ¶¶ 25-32. The Complaint further pleads that Danone has spent "hundreds of thousands of dollars" advertising and marketing the Product, "sold over 16.6 million units" of the Product, generated "nearly $100 million in revenue" from those sales, and received unsolicited press and social media attention directed at the Product. *Id.* ¶¶ 33-36.

**B. The Competition**

Chobani, through its ownership of La Colombe, sells competing RTD cold brew coffee. *Id.* ¶ 10. Before Chobani acquired La Colombe, La Colombe sold a yellow RTD light roast Colombian cold brew product, displayed below:




*Id.* ¶¶ 40, 45.

In spring 2021, La Colombe updated the product's packaging, changing the reported roast level from light to medium, and adding the phrase "Bright & Flavorful," *id.* ¶¶ 42-43:




*Id.* ¶ 42.

Danone contends that, following Chobani's December 2023 acquisition of La Colombe, *id.* ¶ 45, Chobani again revised the La Colombe product packaging — this time altering the branding in several material respects to more closely match that of the Product, *id.* ¶ 48. Specifically, Chobani removed the blue band from the bottle, changed the label color, added a longer vertical band running from the cap area, changed the roast level back to light roast, and, most notably, replaced "Bright & Flavorful" with "Bright & Mellow." *Id.* ¶¶ 48-50. The rebranded Chobani product (the "Infringing Product") is pictured below:




*Id.* ¶ 48.

Danone contends that Chobani's use of "Bright & Mellow" on its revised packaging is "confusingly similar" to Danone's BRIGHT & MELLOW trademark. *Id.* ¶¶ 67, 75-76; *see also id.* ¶¶ 53-54 (alleging likely harm to Danone in the form of consumer confusion). The Complaint further alleges that the risk of consumer confusion is heightened because the parties' products are directly competitive RTD cold brew coffees sold through the same retail channels, often in close proximity to one another. *Id.* ¶¶ 56-57.

## II. Procedural History

Danone commenced this action on July 29, 2025. *See generally id.* Danone asserts four causes of action against Chobani: infringement of an unregistered trademark and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and trademark infringement and unfair competition under New York common law. *Id.* ¶¶ 61-86. On October 6, 2025, Chobani moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim on which relief can be granted. Mot.; Dkt. 18 ("Br."); Dkt. 19 ("Ascher Decl."); Dkts. 19-1–19-50. Danone filed its opposition brief on November 17, 2025, Dkt. 24 ("Opp."); Dkt. 25 ("Lamb Decl."); Dkts. 25-1–25-10, and Chobani replied on December 8, 2025, Dkt. 26 ("Reply"); Dkt. 27 ("Ascher Reply Decl."); Dkts. 27-1–27-2. The motion is thus fully briefed. On July 20, 2026, the parties appeared before the Court for oral argument on Chobani's motion. *See* Dkt. 28.

# LEGAL STANDARDS

## I. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. And the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins.*

*Co.*, 974 F.3d 183, 188-89 (2d Cir. 2020) (alteration adopted) (quoting *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).

**II. Trademark Infringement and Unfair Competition Under the Lanham Act**

Danone's federal claims concern an unregistered mark and therefore arise under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Compl. ¶¶ 65, 69, 78; *see EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000) ("[Section 43(a)] protects unregistered trademarks from infringement."). "[T]o prevail on a trademark infringement claim for . . . [an] unregistered trademark[], pursuant to [Section 43(a)], a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of [any] goods or services,' (5) without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005) (citation omitted) (quoting 15 U.S.C. § 1114(1)(a)); *accord Lopez v. Nike, Inc.*, No. 20-cv-00905 (PGG) (JLC), 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021), *report and recommendation adopted*, 2021 WL 2207451 (S.D.N.Y. Feb. 16, 2021). In addition to proving the mark's validity in accordance with the above, "the plaintiff must prove that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009); *see* 15 U.S.C. § 1125(a)(1)(A) (providing that a person "shall be liable in a civil action" if their use of the mark of another "is likely to cause confusion[] or . . . mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person"); *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 161 (2d Cir. 2016) ("[T]he modern test of infringement is whether the defendant's use is likely to cause confusion

not just as to source, but also as to sponsorship, affiliation or connection." (alteration adopted) (emphasis omitted) (quoting 4 McCarthy on Trademarks and Unfair Competition § 23:76 (4th ed.))). "Courts often narrow this analysis to two prongs: (1) the validity of plaintiff's trademark and (2) likelihood of confusion." *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 411 (S.D.N.Y. 2006); *see, e.g.*, *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 417 (2d Cir. 2018) ("The test for trademark infringement looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." (alteration adopted) (quoting *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003))).

"Confusion must be proven by 'probability[,] . . . not a mere possibility[,]' which would affect 'numerous ordinary prudent purchasers.'" *Lion-Aire Corp. v. Lion Air Installation, Inc.*, 747 F. Supp. 3d 488, 503 (E.D.N.Y. 2024) (quoting *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005)); *see also Starbucks Corp.*, 588 F.3d at 117 ("[A]ctual confusion is not necessary to establish a likelihood of confusion[.]"). "To determine whether there is a likelihood of consumer confusion, [courts in the Second Circuit] look to [the] eight . . . *Polaroid* factors." *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 110 (2d Cir. 2023). "The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (quoting *Starbucks Corp.*, 588 F.3d at 115); *accord Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.

1961). "Those factors are neither exhaustive nor applied mechanically." *Souza*, 68 F.4th at 110. "No single factor is dispositive . . . . But it is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why." *Int'l Info. Sys.*, 823 F.3d at 160 (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995)).

"The standards governing claims for unfair competition, under Section 43(a) of the Lanham Act, and for trademark infringement . . . are substantially the same." *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 397 (S.D.N.Y. 2021); *see also Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978) (per curiam) ("It is well settled that the crucial issue in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question."); *accord Opal Fin. Grp., Inc. v. Opalesque, Ltd.*, 634 F. App'x 26, 27 (2d Cir. 2015) (summary order). In some circumstances, though, an unfair competition claim may survive even where a trademark infringement claim cannot. *See, e.g.*, *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d. Cir. 1997) (observing that "[t]he fact that [the at-issue] mark is generic," and therefore not entitled to trademark protection, "does not preclude a[n] . . . unfair competition" claim).

## III. Trademark Infringement and Unfair Competition Under New York Common Law

Danone separately asserts New York common law claims for trademark infringement and unfair competition. Compl. ¶¶ 81-86. "Under New York common law, the standards for trademark infringement and unfair competition are 'virtually identical' to the standard under the Lanham Act, 'except that New York law requires an additional showing of bad faith'" for an unfair competition claim. *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 229 (S.D.N.Y. 2023) (alteration adopted) (quoting *Lopez v. Adidas Am., Inc.*, No. 19-cv-07631 (LJL),

2020 WL 2539116, at *15 (S.D.N.Y. May 19, 2020)); *accord 1-800 Contacts, Inc. v. JAND, Inc.*, 608 F. Supp. 3d 148, 160-61 (S.D.N.Y. 2022), *aff'd*, 119 F.4th 234 (2d Cir. 2024); *see also Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022) ("For a trademark infringement claim under New York common law, 'it is well-established that its elements mirror the Lanham Act claim's.'" (alterations adopted) (quoting *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 250 (S.D.N.Y. 2018))); *Chanel, Inc. v. Richardson*, No. 17-cv-04565 (PKC), 2018 WL 6097865, at *2 (S.D.N.Y. Nov. 20, 2018) ("The elements of a federal trademark-infringement claim and a New York unfair competition claim are almost indistinguishable, except that New York requires an additional element of bad faith." (quoting *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10-cv-01611 (PKC), 2012 WL 1022247, at *20 (S.D.N.Y. Mar. 22, 2012))).

## DISCUSSION

### I. Materials Properly Considered

On a Rule 12(b)(6) motion, a court is generally limited to the "facts stated on the face of the complaint," as well as "documents appended to the complaint or incorporated in the complaint by reference," "matters of which judicial notice may be taken," and documents "'integral' to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (first quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016); and then quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). "A document is 'integral' if the complaint 'relies heavily on its terms and effects.'" *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) (quoting *Chambers*, 282 F.3d at 153). The Court therefore considers the product images reproduced in the Complaint. *See* Compl. ¶¶ 23, 27, 32, 39, 40, 42, 47, 48-50, 52-53, 57. Those images are part of the pleading itself and are central to Danone's allegations concerning trademark use, copying, and confusion.

The Court also takes judicial notice of the October 1, 2025 nonfinal Office Action issued by the United States Patent and Trademark Office ("USPTO") concerning Danone's application to register BRIGHT & MELLOW, Dkt. 27-1 ("Office Action"), as well as its prosecution history, Dkt. 27-2; *see also Bright & Mellow*, USPTO, https://tsdr.uspto.gov/#caseNumber=99042437&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch [https://perma.cc/9JVG-U5RB] (last visited July 22, 2026).[1] USPTO records are official public records properly subject to judicial notice. *See Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the [USPTO]."); *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014) ("[T]he Court may take judicial notice of official records of the [USPTO]."). The Court does not, however, treat the examining attorney's determination as binding on this Court. *See Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 292 (S.D.N.Y. 2012) ("The deference due to the USPTO's decision here is limited because it was not a final decision of the USPTO[.]"); *Michaels v. Agros Trading Confectionery Spólka Akcyjna*, No. 16-cv-01015 (LJV) (JJM), 2018 WL 9810847, at *1 (W.D.N.Y. June 25, 2018) (clarifying that while a court may "take judicial notice of the existence of the [US]PTO proceedings," it may not "assume the truth of the [US]PTO's findings"), *report and recommendation adopted sub nom. Michaels v. Unitop Sp. Z.O.O.*, 2019 WL 5616700 (W.D.N.Y. Oct. 31, 2019).

Next, Chobani submitted nearly fifty articles, webpages, advertisements, and third-party product listings that it asserts establish the meaning of the words "bright" and "mellow," the

---

[1] It bears note that Danone was not fully forthcoming about this history, highlighting in its opposition brief that its "application for registration of the Mark was approved for publication on July 22, 2025," Opp at 10 n.2 (citing Compl. ¶ 38), while neglecting to mention that its application was subsequently refused on October 1, 2025, Office Action at 3, before Danone filed its brief.

prevalence of third-party use of those words, and consumer understanding of the same. Dkts. 19-1–19-49; *see* Br. at 10-12, 16, 19, 21, 23-25, 27 (relying on these documents). Those materials are not attached or integral to the Complaint, and judicial notice may not be used to accept the truth of the factual assertions they contain. *See Crespo v. Franco*, No. 22-cv-07345 (PKC), 2024 WL 4188356, at *4 (S.D.N.Y. Sept. 13, 2024) ("The Court may take judicial notice of public documents such as news articles and public reports for the fact that they were published but not for the truth of the statements therein."). Here, Chobani asks the Court to do more than notice that the materials exist; it asks the Court to infer from them how industry participants and consumers use and understand the component words of the phrase at issue. That consideration is inappropriate on a motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("[W]hen matters outside the pleadings are presented . . . , [the] court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment[.]" (first alteration in original) (internal quotation marks and citation omitted)); *see also Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999) ("[V]igorous enforcement of the conversion requirement helps ensure that courts will refrain from engaging in fact-finding [on] a motion to dismiss, and also that plaintiffs are given a fair chance to contest defendants' evidentiary assertions[.]"). The Court therefore declines to consider those materials in evaluating consumer understanding of the Mark and declines to convert the motion into one for summary judgment. *See, e.g.*, *Greenlight Cap., Inc. v. GreenLight (Switzerland) S.A.*, No. 04-cv-03136 (HB), 2005 WL 13682, at *9 (S.D.N.Y. Jan. 3, 2005) (declining to convert motion to dismiss to one for summary judgment and therefore "not consider[ing] the documents [defendant] . . . appended to its motion papers purportedly to document the generic nature of the term 'green light'").

## II. Danone Has Plausibly Alleged That It Has a Valid Trademark

Turning now to the merits, to satisfy the first element of a trademark infringement claim, Danone must show that it "owns a valid protectable mark." *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 135-36 (2d Cir. 2023). Where, as here, "'the mark is not registered,' the burden is on the proponent to 'prove that its mark is a valid trademark.'" *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 166 (2d Cir. 2016) (quoting *Reese Publ'g Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980)). "An unregistered mark is entitled to protection under the Lanham Act," and is therefore a valid trademark, "if it would qualify for registration as a trademark." *Star Indus., Inc.*, 412 F.3d at 381. "To qualify for registration . . . a mark must be sufficiently distinctive to distinguish the registrant's goods from those of others." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "[A] mark [may] either be (1) 'inherently distinctive' or (2) distinctive by virtue of acquired secondary meaning." *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 214 n.2 (2d Cir. 2003) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)).

"Inherent distinctiveness is assessed on a continuum from least to most distinctive, with the aid of categories usually called (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful, with marks in the last category considered the strongest." *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020); *accord Star Indus., Inc.*, 412 F.3d at 384-85. "A generic term refers to the genus of which a particular product is a species . . . and is ineligible for trademark protection under any circumstances." *GMT Prods., L.P. v. Cablevision of N.Y.C., Inc.*, 816 F. Supp. 207, 210 (S.D.N.Y. 1993); *accord Two Pesos, Inc.*, 505 U.S. at 768; *see Star Indus., Inc.*, 412 F.3d at 385 ("Generic marks are those consisting of words identifying the relevant category of goods or services. They are not at all distinctive and thus are not protectable

under any circumstances.”). “A descriptive mark, which describes a product’s qualities, ingredients[,] or characteristics, is entitled to protection only upon proof that it has acquired ‘secondary meaning’ — an[] identity that consumers associate with a single source of goods or services.” *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, No. 00-cv-05304 (SJ), 2004 WL 896952, at *3 (E.D.N.Y. Mar. 26, 2004) (quoting *Gruner + Jahr USA Publ’g v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993)); *see Bernard v. Com. Drug Co.*, 964 F.2d 1338, 1341 (2d Cir. 1992) (“A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.” (citation omitted)). “[S]econdary meaning,” sometimes referred to as “[a]cquired distinctiveness,” “is determined by analyzing six factors: advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark’s use.” *Car-Freshner Corp.*, 980 F.3d at 329; *accord Shandong Shinho Food Indus. Co. v. May Flower Int’l, Inc.*, 521 F. Supp. 3d 222, 249 (E.D.N.Y. 2021).

In contrast, “[s]uggestive, fanciful and arbitrary terms are entitled to trademark protection without proof of secondary meaning.” *GMT Prods., L.P.*, 816 F. Supp. at 210; *accord Einhorn v. Mergatroyd Prods.*, 426 F. Supp. 2d 189, 194-95 (S.D.N.Y. 2006). “A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods.” *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 750 (S.D.N.Y. 2021) (quoting *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)). “An arbitrary mark is one in which an otherwise common word is used in an unfamiliar way.” *Lever Bros. Co. v. Am. Bakeries Co.*, 693 F.2d 251, 256 (2d Cir. 1982). And “[a] fanciful mark, accorded the highest level of protection, is not a real word but is invented for its use as a mark.” *First Nat’l Bank of Omaha,*

*Inc. v. Mastercard Int'l Inc.*, Nos. 03-cv-00707 (DLC), 02-cv-03691 (DLC), 2004 WL 1575396, at *6 (S.D.N.Y. July 15, 2004).

Chobani principally argues that Danone cannot satisfy the first element of its trademark infringement claim because BRIGHT & MELLOW is generic or, at minimum, descriptive and lacking an adequately pleaded secondary meaning. Br. at 8-19. Alternatively, Chobani argues that even if the Mark is suggestive and therefore entitled to a heightened level of protection, Danone is not using BRIGHT & MELLOW as a trademark, thereby rendering the Mark unprotectable. *Id.* at 19-22. The Court disagrees.

**A. Danone Has Plausibly Alleged a Protectable Mark**

*1. Genericness*

Chobani first argues that BRIGHT & MELLOW is generic because "bright" and "mellow" identify types or flavor characteristics of coffee. *Id.* at 8-15. The Court cannot reach that conclusion from the pleadings.

Whether a term is generic turns on the term's "primary significance" to the relevant consuming public — that is, whether consumers understand the term principally to name a type or genus of goods rather than to identify the source of the goods. *See Courtenay Commc'ns Corp.*, 334 F.3d at 214 n.2 ("[A] mark is generic if, in the mind of the purchasing public it does not distinguish products on the basis of source but rather refers to the type of product."); *accord Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 480 (S.D.N.Y. 2014); *see also* 15 U.S.C. § 1064(3). "[N]otable examples of [terms] held to be generic are 'matchbox' for a type of toy car, 'warehouse' in the context of its use as a shoe store, 'safari' as applied to the specific types of clothing one would wear on a safari, and 'super glue' for certain strong, rapid-setting adhesives." *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 213 (S.D.N.Y. 2001).

A genericness inquiry thus generally presents a question of fact, which ordinarily cannot be resolved on a motion to dismiss.[2] *See Cross Com. Media, Inc.*, 841 F.3d at 162 ("A trademark's inherent distinctiveness is a fact-intensive issue."); *Now-Casting Econs., Ltd. v. Econ. Alchemy LLC*, No. 18-cv-02442 (ER), 2019 WL 4640219, at *3 (S.D.N.Y. Sept. 24, 2019) ("Whether a trademark is generic or descriptive is a matter of fact that is not properly determined by examining the pleadings alone."), *aff'd*, No. 23-947, 2024 WL 2720235 (2d Cir. May 28, 2024) (summary order); *Textile Deliveries, Inc. v. Stagno*, No. 90-cv-02020 (JFK), 1990 WL 155709, at *5 (S.D.N.Y. Oct. 9, 1990) ("Whether a term is descriptive or generic is an issue of fact."), *aff'd*, 52 F.3d 46 (2d Cir. 1995). For that reason, courts in this Circuit have consistently declined to decide genericness on a motion to dismiss. *See, e.g.*, *Kid Car NY, LLC*, 518 F. Supp. 3d at 750-51 (unregistered mark); *Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 436 (S.D.N.Y. 2001) (unregistered mark); *Greenlight Cap., Inc.*, 2005 WL 13682, at *9 (unregistered mark); *George & Co. LLC v. Spin Master U.S. Holdings, Inc.*, No. 19-cv-04391 (DG) (SJB), 2021 WL 6127389, at *10-11 (E.D.N.Y. Nov. 23, 2021), *report and recommendation adopted*, 2021 WL 6125818 (E.D.N.Y. Dec. 28, 2021); *FragranceNet.com, Inc.*, 672 F. Supp. 2d at 336; *N. Food I/E, Inc. v. Lam Sheng Kee (USA) Enter. Corp.*, No. 14-cv-00811 (WFK) (JO), 2015 WL 13742379, at *6 (E.D.N.Y. Mar. 9, 2015); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 457-58 (E.D.N.Y. 2004); *Drone Racing League, Inc. v. DR1, LLC*, No. 18-cv-04093 (DLC), 2018 WL 6173714, at *4 (S.D.N.Y. Nov. 26, 2018); *May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*, No. 21-cv-02891 (RPK) (PK), 2022 WL 4539577,

[2] Notably, some courts have recognized that a periodical title that names the class of periodical, which is not applicable here, may be held generic as a matter of law. *See CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 13-15 (2d Cir. 1975); *see also FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 335-36 (E.D.N.Y. 2009) (collecting and distinguishing periodical-title cases).

at *2-3 (E.D.N.Y. Sept. 28, 2022); *Agros Trading*, 2018 WL 9810847, at *2; *Textile Deliveries, Inc.*, 1990 WL 155709, at *5; *see also Conn. Cmty. Bank v. Bank of Greenwich*, No. 06-cv-01293, 2007 WL 1306547, at *2 (D. Conn. May 3, 2007) ("[A]t this preliminary stage, attempting to decide whether plaintiff's mark . . . taken as a whole is generic and not entitled to trademark protection, would constitute premature fact-finding." (internal quotation marks and citation omitted)); *Courtenay Commc'ns Corp.*, 334 F.3d at 215 (finding district court erred when it decided on a motion to dismiss that mark was generic and that plaintiff had accordingly failed to state Lanham Act claims).[3]

Chobani's cited authorities from within this Circuit do not establish otherwise. *See CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11 (2d Cir. 1975) (periodical-title case); *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208 (S.D.N.Y. 2001) (summary judgment); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976) (appeal after trial); *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286 (S.D.N.Y. 2000) (post-trial findings of fact and conclusions of law); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997) (preliminary injunction appeal); *Girl Scouts v. Boy Scouts*, 597 F. Supp. 3d 581 (S.D.N.Y. 2022) (summary judgment); *GMT Prods., L.P. v. Cablevision of New York City, Inc.*, 816 F. Supp. 207 (S.D.N.Y. 1993) (summary judgment); *CSI Ent., Inc. v. Anthem Media Grp.,*

[3] The Court's own extensive search has identified only one decision in this Circuit outside the periodical-title context that appears to have resolved the question of genericness on a motion to dismiss: *Solow Building Co. v. Nine West Group, Inc.*, No. 00-cv-07685 (DC), 2001 WL 736794 (S.D.N.Y. June 29, 2001), *aff'd on other grounds*, 48 F. App'x 15 (2d Cir. 2002) (summary order). *Solow* concerned the phrase "9 West," which functioned as the street-address designation of plaintiff's building located at 9 West 57th Street. *Id.* at *1. The court found, as an additional basis for dismissal, that the ordinary referential meaning of that name was apparent from the complaint. *Id.* at *7 ("There is a '9 West' on almost every cross-street in Manhattan, and, thus, '9 West' surely retains a 'generic meaning' in the 'language' of building addresses, which is how plaintiff uses the name."). Those circumstances are not present here — as exhibited by Chobani's efforts to establish the genericness of the Mark by reference to external publications. Dkts. 19-1–19-49.

*Inc.*, No. 15-cv-03508 (AMD) (RER), 2016 WL 11263667 (E.D.N.Y. Dec. 30, 2016) (preliminary injunction), *report and recommendation adopted*, 2017 WL 2778466 (E.D.N.Y. June 27, 2017); *E. Air Lines, Inc. v. N.Y. Air Lines, Inc.*, 559 F. Supp. 1270 (S.D.N.Y. 1983) (post-trial findings of fact and conclusions of law). And the remainder of the cases on which Chobani relies are either out-of-Circuit, inapposite procedurally, or both. *See, e.g.*, *Closed Loop Mktg., Inc. v. Closed Loop Mktg., LLC*, 589 F. Supp. 2d 1211 (E.D. Cal. 2008) (outside this Circuit); *Beyond Blond Prods., LLC v. Heldman*, No. 20-cv-05581, 2022 WL 2787536 (C.D. Cal. June 8, 2022) (outside this Circuit); *Whipple v. Brigman*, No. 12-cv-00258, 2013 WL 566817 (W.D.N.C. Feb. 13, 2013) (Rule 12(c) decision outside this Circuit); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139 (N.D. Cal. 2020) (Rule 12(c) decision outside this Circuit); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir. 1977) (preliminary injunction appeal outside this Circuit); *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153 (7th Cir. 1996) (preliminary injunction appeal outside this Circuit); *Snyder's Lance, Inc. v. Frito-Lay N. Am., Inc.*, 542 F. Supp. 3d 371 (W.D.N.C. 2021) (summary judgment outside this Circuit).

Consistent with authority in this Circuit, then, the Court looks to the Complaint and finds that it plausibly alleges that the Mark is not a generic term used to name a genus of Danone products. As a general matter, BRIGHT & MELLOW — unlike, say, "RTD coffee," "cold brew coffee," or "light roast coffee" — is not, on its face, indicative of a category of products. "Based solely on the allegations in the Complaint, the Court is unable to determine whether there is 'a recognized category of [services] in the market place known as'" BRIGHT & MELLOW. *Kid Car NY, LLC*, 518 F. Supp. 3d at 751 (quoting *Genesee Brewing Co.*, 124 F.3d at 148). Indeed, the Complaint alleges the opposite: some of Danone's focus group participants did not know

from the Mark what taste to expect and had difficulty reconciling "bright" with "mellow." Compl. ¶ 30.

In response, Chobani separates the Mark into its component words, "bright" and "mellow," and argues instead that each individual word is generic. Br. at 10. But "a mark must be evaluated by examining the mark in its entirety, rather than breaking down its component parts." *FragranceNet.com, Inc.*, 672 F. Supp. 2d at 337 (internal quotation marks and citation omitted); *cf. Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 47 (2d Cir. 2020) (summary order) ("[W]e fail to see how competitors' use of [the] term ['Instant Snow'] proves anything about the genericness of the distinct phrase 'Insta-Snow.'"). The Court cannot find, at the motion to dismiss stage, that the combined phrase BRIGHT & MELLOW (or even each component word, "bright" and "mellow") is the common name of a coffee genus as a matter of law. *See, e.g.*, *FragranceNet.com, Inc.*, 672 F. Supp. 2d at 337 ("[T]he component parts of the registered marks at issue in this case must be analyzed in their entirety and, given the marks at issue, such a determination cannot be made at the motion to dismiss stage.").

The USPTO Office Action reinforces, though does not control, that conclusion. There, the examining attorney issued a nonfinal refusal on the ground that BRIGHT & MELLOW is "merely descriptive," not on the ground that it is generic. Office Action at 3. The USPTO's classification is consistent with the distinction Danone raises when it argues that BRIGHT & MELLOW draws from the qualities of the coffee rather than naming a product category. *See* Opp. at 13. Accordingly, Chobani has not established genericness as a matter of law at this stage.

*2. Descriptiveness and Secondary Meaning*

Chobani next argues that BRIGHT & MELLOW is unprotectible because it is descriptive. Br. at 15-19 (arguing that the Mark is merely descriptive and lacks adequately

pleaded secondary meaning). Danone responds that the Mark is suggestive and therefore warrants protection even absent a showing of secondary meaning. Opp. at 13 (contending that the Mark is suggestive). As discussed, a descriptive term "forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods," *Bernard*, 964 F.2d at 1341 (citation omitted), while a suggestive term requires "imagination, thought, and perception" to connect the term with the product, *Kid Car NY, LLC*, 518 F. Supp. 3d at 750 (quoting *Lane Cap. Mgmt., Inc.*, 192 F.3d at 344). Because classification turns on consumer perception, the Court need not and does not classify the Mark on this motion.

Even assuming that the Mark is descriptive, rather than suggestive, dismissal would be warranted only if Danone failed plausibly to allege secondary meaning. *See Pfizer, Inc.*, 2004 WL 896952, at *3. "Secondary meaning attaches to a mark when the consuming public primarily associates the term with a particular source." *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1509 (2d Cir. 1997) (internal quotation marks and citation omitted); *accord Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 441 (S.D.N.Y. 2017). The Second Circuit has identified six relevant factors in establishing secondary meaning: "[(1)] advertising expenditures, [(2)] consumer studies linking the mark to a source, [(3)] unsolicited media coverage of the product, [(4)] sales success, [(5)] attempts to plagiarize the mark, and [(6)] the length and exclusivity of the mark's use." *Car-Freshner Corp.*, 980 F.3d at 329. "None of these [factor]s is determinative and not every one of them must be proved to make a showing of secondary meaning." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 282 (S.D.N.Y. 2018) (quoting *Landscape Forms Inc. v. Columbia Cascade Co.*, 117 F. Supp. 2d 360, 366 (S.D.N.Y. 2000)), *abrogated on other grounds by Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112 (2d Cir. 2025). Relevant here, "[h]owever, whether secondary meaning has been established is a question of fact" that is ill-suited to resolution on a motion to dismiss.

*Kaplan, Inc.*, 16 F. Supp. 3d at 348; *accord A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 212-13 (S.D.N.Y. 2015) (collecting cases); *see Christian Louboutin S.A. v. Yves St. Laurent Am. Holdings, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012) ("Whether a mark has acquired distinctiveness [*i.e.*, secondary meaning] is 'an inherently factual inquiry.'" (quoting *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir. 1987)).

Dismissal is inappropriate at this stage because the facts about secondary meaning have not been fully developed, and Danone pleads concrete facts bearing on several of the secondary meaning factors. It alleges "hundreds of thousands of dollars" spent in advertising and marketing "the BRIGHT & MELLOW Product," unsolicited industry and social media coverage, and sales exceeding "16.6 million units" and "nearly $100 million in revenue." Compl. ¶¶ 33-36. Danone also expressly alleges that "consumers have come to associate BRIGHT & MELLOW with a single source." *Id.* ¶ 37. These allegations permit a plausible inference that substantial sales, promotion, and consumer exposure occurred before Chobani allegedly adopted the phrase in late 2024. *See, e.g.*, *Kid Car NY, LLC*, 518 F. Supp. 3d at 751-52 (finding secondary meaning plausibly pleaded where plaintiff alleged that it had "spent substantial time and expense" to promote the mark and detailed unsolicited media coverage).

Contrary to Chobani's assertion, *see* Br. at 17, the absence of any alleged consumer survey does not compel dismissal. No single secondary meaning factor is dispositive, and Danone need not prove its case in the Complaint. *See, e.g.*, *Blockchain Luxembourg S.A. v. Paymium, SAS*, No. 18-cv-08612 (GBD), 2019 WL 4199902, at *6-7 (S.D.N.Y. Aug. 7, 2019) (finding secondary meaning plausibly pleaded where plaintiff alleged marketing, sales, and unsolicited publicity); *Kid Car NY, LLC*, 518 F. Supp. 3d at 751-52 (marketing and unsolicited publicity). The cases on which Chobani relies involved complaints lacking comparable factual detail or were decisions on more developed records. *See Hello I Am Elliot, Inc. v. Sine*, No. 19-

cv-06905 (PAE), 2020 WL 3619505, at *8-10 (S.D.N.Y. July 2, 2020) (no consumer surveys, no alleged unsolicited publicity, sales in the tens of thousands, and no indication that marketing featured the mark); *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598-600 (E.D.N.Y. 2017) (amount of funds spent on marketing not specified, no consumer surveys, no alleged sales, no alleged unsolicited publicity); *Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*, No. 16-cv-05079 (JGK), 2016 WL 4367990, at *7 (S.D.N.Y. Aug. 12, 2016) (observing, in evaluating a request for a preliminary injunction, that plaintiff "ha[d] not adduced any evidence showing the typical indicia of secondary meaning, such as consumer surveys, unsolicited media coverage, or advertising expenditures"); *Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12-cv-03599 (RWS), 2013 WL 866867, at *3-5 (S.D.N.Y. Mar. 8, 2013) (no consumer surveys, number of units sold bearing trade dress not identified, no indication that marketing featured trade dress, no indication of whether media coverage occurred after adoption of trade dress); *Kangadis, Inc. v. Euphrates, Inc.*, 378 F. Supp. 2d 162, 163-64 (E.D.N.Y. 2005) (preliminary injunction); *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 483-84 (S.D.N.Y. 2004) (preliminary injunction); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers*, 894 F. Supp. 2d 288, 297 (S.D.N.Y. 2012) (summary judgment), *as amended* (Sept. 19, 2012); *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 342 (E.D.N.Y. 2007) (summary judgment). Whether Danone can establish secondary meaning if the BRIGHT & MELLOW mark is found to be descriptive remains to be seen, but at this early stage Danone's allegations concerning marketing, sales, and publicity[4] collectively support a plausible

[4] As to the fifth factor (attempts at plagiarism), because the only example of plagiarism that Danone references in the Complaint is Chobani's "alleged trademark infringement at issue in this suit," "this factor does not support a finding of secondary meaning" at this stage. *Hello I Am Elliot, Inc.*, 2020 WL 3619505, at *10 (collecting cases).

claim of secondary meaning. Accordingly, the Court does not hold as a matter of law at this stage that BRIGHT & MELLOW is unprotectable as merely descriptive without secondary meaning.

**B. Danone Has Plausibly Alleged Trademark Use**

Chobani next argues that Danone does not use BRIGHT & MELLOW as a trademark because the phrase merely identifies a flavor profile and appears alongside the prominent STōK house mark and other product descriptors. Br. at 19-22. That argument also cannot be resolved against Danone on the pleadings.

Whether wording on a package functions as a mark depends on how consumers would perceive it in context. *See Med. Depot, Inc. v. Med Way US, Inc.*, 774 F. Supp. 3d 554, 569 (E.D.N.Y. 2025) ("[T]he use as a mark analysis depends on how the relevant public views a mark[.]"). The Complaint alleges that Danone selected BRIGHT & MELLOW as a unique product identifier, placed it at the top of the principal label, set it apart from surrounding wording in location and style, and used it consistently to identify one product within the STōK line. Compl. ¶¶ 23-24, 29, 32. The incorporated images are consistent with those allegations. They show BRIGHT & MELLOW displayed above the STōK house mark and highlighted and separated from the roast-level language appearing lower on the package. *Id.* ¶ 32. Although it is a close call, those allegations plausibly support source identifying use, at least at this stage.

The simultaneous presence of the STōK mark does not compel a different result. "A house mark and a product mark can be used as trademarks simultaneously." *Med. Depot, Inc.*,

---

As to the sixth factor (length and exclusivity of use), Danone alleges that it used the Mark for nearly four years before Chobani adopted it. *See* Compl. ¶¶ 23, 48. But while "there is no magic time span that confers secondary meaning," *Kaplan, Inc.*, 16 F. Supp. 3d at 348-49 (citation omitted) (collecting cases), Danone does not specifically plead exclusive use in the Complaint. This factor therefore likewise does not support a finding of secondary meaning at this juncture.

774 F. Supp. 3d at 570; *see Triboro Quilt Mfg. Corp. v. Luve LLC*, No. 10-cv-03604 (VB), 2014 WL 1508606, at *12 (S.D.N.Y. Mar. 18, 2014) ("[T]rademark law recognizes that one 'house mark' . . . may have several associated 'product marks[.]'" (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 618 n.7 (2d Cir. 2001))). Indeed, Danone "owns an incontestable trademark registration covering the LOW AND SLOW trademark," Compl. at 8 n.1, which is similarly displayed alongside the STōK mark, *see id.* ¶ 57.

Chobani's cited authorities confirm that contextual presentation may defeat claimed trademark use, which may ultimately be the case here. However, these cases do not address the issue on the pleadings, and the Court will not do so here. *See Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008) (summary judgment), *aff'd*, 329 F. App'x 333 (2d Cir. 2009) (summary order); *Solid 21, Inc. v. Breitling U.S.A. Inc.*, 96 F.4th 265, 277 (2d Cir. 2024) (appeal of summary judgment).

Thus, drawing all reasonable inferences for Danone, the Complaint plausibly alleges use of BRIGHT & MELLOW as a trademark.

## III. Danone Has Plausibly Alleged Likelihood of Confusion

Turning to the second element of a trademark infringement claim, Chobani argues that Danone fails to plead likelihood of confusion. Br. at 28-32. "[L]ikelihood of confusion is a 'fact-intensive analysis,' [that] 'ordinarily does not lend itself to a motion to dismiss.'" *Caliko, SA v. Finn & Emma, LLC*, No. 21-cv-03849 (VEC), 2022 WL 596072, at *6 (S.D.N.Y. Feb. 28, 2022) (quoting *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 55 (S.D.N.Y. 2015)); *accord Blockchain Luxembourg S.A.*, 2019 WL 4199902, at *7; *World Trade Ctrs. Ass'n, Inc. v. Port Auth.*, No. 15-cv-07411 (LTS), 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016); *see also Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 446 (S.D.N.Y. 2012) (noting that "courts have refused to dismiss infringement claims where a likelihood of confusion analysis

would be necessary on the pleadings" and collecting cases); *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) ("Normally, the likelihood of confusion is a factual question, centering on the probable reactions of prospective purchasers of the parties' goods.").

Dismissal may be appropriate where the complaint and incorporated materials permit only one reasonable conclusion, such as where there is "a total absence of proximity between the marks." *See Portkey Techs. Pte Ltd. v. Venkateswaran*, No. 23-cv-05074 (JPO), 2024 WL 3487735, at *3 (S.D.N.Y. July 19, 2024) (collecting and distinguishing cases). This is not such a case. Indeed, Chobani's principal authorities involved materially different marks or different procedural postures. *See RiseandShine Corp. v. PepsiCo, Inc.*, No. 23-1176-cv, 2024 WL 5165388, at *1 (2d Cir. Dec. 19, 2024) (summary order) (summary judgment record), *cert. granted*, No. 24-1016, 2026 WL 1855011 (U.S. June 29, 2026); *Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 311-12 (S.D.N.Y. 2005) (marks shared only the generic term "Book" and created different overall impressions); *Adidas Am., Inc.*, 2020 WL 2539116, at *9 (concluding that marks were "plainly dissimilar"); *E.A. Sween Co. v. A & M Deli Express Inc.*, 787 F. App'x 780, 783-84 (2d Cir. 2019) (summary order) (affirming dismissal where marks exhibited "a substantial amount of dissimilarity").

Here, Danone alleges use of the identical phrase on a directly competing product, together with coordinated changes to the accused packaging. The eight *Polaroid* factors, considered individually, confirm that Danone has plausibly pleaded likelihood of confusion.

**A. Strength of the Mark**

"The strength of a trademark is assessed based on either or both of two components: (1) the degree to which it is inherently distinctive; and (2) the degree to which it has achieved public recognition in the marketplace, sometimes called acquired strength." *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 120 (2d Cir. 2022). The degree of inherent distinctiveness

"depends on whether the mark is generic, descriptive, suggestive, arbitrary or fanciful." *Arrow Fastener Co.*, 59 F.3d at 391. Even if the Mark is descriptive, rather than suggestive, its protectability depends heavily on its acquired strength, namely the Mark's alleged secondary meaning. *See RiseandShine Corp.*, 41 F.4th at 124 (evaluating whether plaintiff had achieved "sufficient acquired strength to counterbalance the inherent weakness of its mark"). Danone has alleged substantial sales, marketing expenditures, and media recognition sufficient to plead some commercial strength. Compl. ¶¶ 34-37. At this stage, this factor is neutral, if not weakly favorable to Danone. *See Solid 21, Inc. v. Jomashop Inc.*, No. 19-cv-01179 (MKB), 2020 WL 9816843, at *4 (E.D.N.Y. Nov. 30, 2020) (finding that "[t]his factor weakly favor[ed] [plaintiff]" where the mark was likely "descriptive" but "[p]laintiff's allegations support[ed] a plausible inference that the mark ha[d] become distinctive in the marketplace").

**B. Similarity of the Marks**

The parties use the identical words, BRIGHT & MELLOW. Compl. ¶ 53. While differences in typeface, placement, and the parties' house marks are relevant to the overall commercial impression, the identity of the claimed word mark cannot be ignored. *See Virgin Enters. Ltd.*, 335 F.3d at 149 (finding that differences in typeface and color were "quite minor in relation to the fact that the name being used as a trademark was the same in each case"). Moreover, similarity is assessed in marketplace context, not merely through "side-by-side" inspection. *See Louis Vuitton Malletier*, 454 F.3d at 117. Danone alleges not only identical wording but also a similar golden-yellow package, a vertical band descending from the cap, and reduced emphasis on roast-level indicators.[5] Compl. ¶¶ 48-53. Those allegations make similarity plausible. This factor favors Danone.

---

[5] The alleged packaging similarities are relevant here only insofar as they bear on how consumers encounter and perceive the asserted BRIGHT & MELLOW mark in the marketplace.

### C. Proximity of the Products

The products are directly competitive. Both are RTD cold brew coffee products, sold through overlapping retail channels, and allegedly displayed near one another in stores. *Id.* ¶¶ 53, 57. As Chobani concedes, Br. at 32, the proximity factor therefore weighs in Danone's favor.

### D. Bridging the Gap

"Bridging the gap refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Capri Sun GmbH*, 595 F. Supp. 3d at 169 (internal quotation marks and citation omitted). There is no gap to bridge here because the parties already compete directly in the same market. Where products are already in direct competition, this factor is neutral. *See Star Indus., Inc.*, 412 F.3d at 387 (observing that where "products are already in competitive proximity, there is really no gap to bridge, and this factor is irrelevant to the *Polaroid* analysis"); *Starbucks Corp.*, 588 F.3d at 115 (same).

### E. Evidence of Actual Confusion

This "factor asks courts to consider the evidence that consumers are actually confused as to the origin of a particular product or service or as to whether the junior user of a mark is sponsored by or affiliated with the senior user." *Disney Enters., Inc. v. Sarelli*, 322 F. Supp. 3d 413, 435 (S.D.N.Y. 2018). Danone does not allege a specific instance of actual confusion. "The absence of evidence of actual consumer confusion is not necessarily fatal to a Lanham Act claim,

---

*See Stephan Co. v. Elizabeth Arden, Inc.*, No. 06-cv-03871 (LTS) (FM), 2006 WL 8430160, at *6 (S.D.N.Y. Dec. 6, 2006) ("The Court must assess the marks in context, and consider the fashion in which a consumer is likely to encounter the terms[,] . . . [which] includes examining the packaging of the respective products."). The Complaint does not plead a separate claim for infringement of trade dress, and the Court does not treat the packaging itself as independently protected.

however, particularly at the motion to dismiss stage." *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 338 (S.D.N.Y. 2023). The Complaint also alleges that Chobani's challenged rebranding appeared only "around December 2024," Compl. ¶ 48, thereby limiting the period in which actual confusion could have surfaced before Danone filed suit in July 2025. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986) (noting that where "there has been little chance for actual confusion," "[i]t would be unfair to penalize [plaintiff] for acting to protect its trademark rights before serious damage has occurred"). At this stage, the absence of pleaded actual confusion is neutral. *Googly Eye Cru, LLC v. Fast Retailing USA, Inc.*, No. 24-cv-03709 (VM), 2025 WL 692125, at *5 (S.D.N.Y. Mar. 4, 2025) (finding same on motion to dismiss).

**F. Chobani's Good Faith**

"This factor considers 'whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product.'" *Arrow Fastener Co.*, 59 F.3d at 397 (quoting *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991)). Danone alleges that Chobani had knowledge of the Product, replaced its established "Bright & Flavorful" phrase with Danone's BRIGHT & MELLOW mark, and simultaneously changed several packaging features to deliberately make its product look more like Danone's, thereby causing consumer confusion. *See* Compl. ¶¶ 2, 7, 48-55, 79. Those allegations, taken as true, support a plausible inference of bad faith. This factor favors Danone.

**G. Quality of Chobani's Product**

The Complaint does not allege that Chobani's coffee is inferior. Nor do the pleadings permit a quality comparison. Products of comparable quality can still create source confusion,

but this factor does not materially favor either party on the allegations presented. *See Googly Eye Cru, LLC*, 2025 WL 692125, at *5. This factor is neutral.

### H. Consumer Sophistication

"The more sophisticated the consumers, the less likely they are to be misled by similarity in marks." *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 102 (2d Cir. 2001). Danone alleges that the relevant products are sold through mass-market retailers and that the Product's target consumers include "first-time buyers" and consumers unfamiliar with RTD coffee. *See* Compl. ¶¶ 28, 56. It also alleges that "hurried consumer[s]" may encounter Danone and Chobani's products side by side and easily confuse the two. *Id.* ¶ 57. Those allegations plausibly describe relatively unsophisticated consumers making purchases without extensive care. *Id.* ¶ 56 (alleging that "[s]uch consumers are, by definition, not sophisticated"). Chobani's reference in its brief to findings about sophisticated purchasers of "high quality coffee products," Br. at 32 (citation omitted), raises a factual issue that cannot override the Complaint's allegations. *See 1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 254 (2d Cir. 2024) (finding "that the district court erred in determining that the relevant consumer base was 'reasonably sophisticated' because this assumed facts outside of the [c]omplaint" (citation omitted)). At this stage, this factor favors Danone.

* * *

In sum, four factors (similarity, proximity, bad faith, and consumer sophistication) favor Danone on the pleadings; three factors (bridging the gap, actual confusion, and quality) are neutral; and one factor (strength of mark) is either neutral or weakly favorable to Danone. The factors will be more fully examined when the facts are developed, but at this stage, Danone has plausibly pleaded likelihood of confusion.

## IV. Descriptive Fair Use Does Not Appear on the Face of the Complaint

As an alternative argument, Chobani argues that "regardless of how Danone uses the phrase, Chobani's use of 'Bright & Mellow' is protected under the fair use provision of the Lanham Act." Br. at 22 (emphasis omitted); *see also id.* at 23-27. This is an invocation of the affirmative defense of descriptive fair use. "Because fair use is an affirmative defense, the party asserting fair use bears the burden of proof." *See Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp. 3d 370, 379 (S.D.N.Y. 2023), *aff'd*, 115 F.4th 163 (2d Cir. 2024). To prevail, Chobani needs to show that all "facts necessary to establish the defense are evident on the face of the [C]omplaint" and incorporated materials. *Kelly-Brown*, 717 F.3d at 308. Danone, in turn, has no obligation to anticipate and negate the defense in its pleading. *See Hayden v. Koons*, No. 21-cv-10249 (LGS), 2022 WL 2819364, at *4 (S.D.N.Y. July 18, 2022) ("As an affirmative defense, fair use is susceptible to the general rule that 'a plaintiff ordinarily need neither anticipate, nor plead facts to avoid, a defendant's affirmative defenses at the pleadings stage.'" (quoting *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021))).

Descriptive fair use requires a showing of three elements: "that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly-Brown*, 717 F.3d at 308 (first citing 15 U.S.C. § 1115(b)(4); and then citing *EMI Catalogue P'ship*, 228 F.3d at 64). Analysis of these elements "often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss." *Id.* at 308; *see also Grant v. Trump*, 563 F. Supp. 3d 278, 284 (S.D.N.Y. 2021) ("Because fair use is a fact-intensive inquiry, it is rarely appropriate for a court to make a determination of fair use at the motion to dismiss stage."). "Nevertheless, [the Second Circuit] has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal[.]" *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016); *see Graham v. Prince*, 265 F. Supp. 3d 366, 379

(S.D.N.Y. 2017) ("[I]t is conceivable — albeit highly unlikely — that a fair use affirmative defense can be addressed on a motion to dismiss[.]"). Such is not the case here. At minimum, the third element is not conclusively established on the face of the Complaint.

Danone alleges that, after acquiring La Colombe, Chobani engaged in "knowing, calculated, and systematic" infringement of Danone's Mark. Compl. ¶ 2. Specifically, Chobani replaced the longstanding phrase "Bright & Flavorful" with Danone's BRIGHT & MELLOW mark, changed the stated roast from medium to light, changed the bottle from bright yellow to a muted golden yellow, removed a distinctive blue band, and added a longer vertical band running from the cap — after Danone had, for years, sold a competing product bearing the same phrase and similar visual presentation. *Id.* ¶¶ 42, 48-53. These actions, Danone alleges, were "deliberate, willful, and in bad faith" and harmed the "goodwill and reputation of Danone's business." *Id.* ¶¶ 70-71. Those allegations support a plausible inference of deliberate copying intended to capitalize on Danone's goodwill and cause consumer confusion. Chobani may ultimately defeat this inference, but the Court cannot make that factual determination on this motion. *See Kelly-Brown*, 717 F.3d at 313 ("Our role in considering a motion to dismiss is not to resolve these sorts of factual disputes.").

*Reveron* and *Arnold*, which Chobani cites in support of its motion, *see* Br. at 25, 27, do not compel otherwise. Indeed, those cases recognize that fair use may be decided at the pleading stage only when the necessary facts are apparent from the complaint. *See Reveron v. Zumiez, Inc.*, No. 23-cv-10114 (JGLC) (GWG), 2024 WL 5131627, at *8 (S.D.N.Y. Dec. 17, 2024) (highlighting plaintiff's "failure to provide any non-conclusory allegations of bad faith"), *report and recommendation adopted sub nom.*, *Reveron v. Spot Int'l, Inc.*, 2025 WL 934356 (S.D.N.Y. Mar. 27, 2025); *Arnold v. ABC, Inc.*, No. 06-cv-01747 (GBD), 2007 WL 210330, at *3 (S.D.N.Y. Jan. 29, 2007) (concluding that there was "no set of facts that, if true, would lead to

the conclusion that ABC sought to conflate its show, 'Boston Legal,' with plaintiff's little known, local, cable-access television program"). Here, good faith is directly contested by well-pleaded factual allegations. Chobani's fair use argument therefore does not warrant dismissal.

**V. Federal Unfair Competition and New York Common Law Claims**

Finally, Chobani seeks dismissal of Danone's remaining claims principally for the same reasons it seeks dismissal of the federal infringement claim. Br. at 32-33. Because the Court denies the motion to dismiss the federal trademark infringement claim, Danone's federal unfair competition and New York common law trademark infringement claims survive as well. *See, e.g.*, *FragranceNet.com, Inc.*, 672 F. Supp. 2d at 329-30, 338.

Danone's common law unfair competition claim is distinct insofar as it also requires a showing of bad faith. *See Chanel, Inc.*, 2018 WL 6097865, at *2. But, as discussed, the Complaint plausibly alleges that Chobani acted in bad faith when it allegedly adopted the BRIGHT & MELLOW language after years of Danone's use, deliberately abandoned its prior "Bright & Flavorful" label in so doing, and contemporaneously altered multiple elements of its packaging to resemble that of Danone's competing product, causing damage to the "goodwill and reputation of Danone's business." Compl. ¶¶ 42, 48-53, 70-71; *see supra* Section III.F; *see also supra* Part IV. Those allegations are sufficient at this stage. The motion to dismiss is therefore denied as to all four claims.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 17.

Chobani must file its answer by **August 10, 2026**. *See* Fed. R. Civ. P. 12(a)(4)(A). The Court will schedule an initial pretrial conference for this matter by separate order.

Dated: July 27, 2026
New York, New York

SO ORDERED.

Jennifer Rochon

JENNIFER L. ROCHON
United States District Judge